**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **GLENDA FAYE HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:22-cv-62-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I.    Introduction and Administrative Proceedings**

Glenda Faye Harris ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on February 21, 2006 wherein she alleged disability onset as of February 15, 2006 due to carpal tunnel in her wrists, arthritis, bursitis, fibromyalgia, spinal/back problems, and cervical surgeries in 2004 and 2006.  (Tr. 62, 81, 87, 571).[1]  Plaintiff's claim was denied at the initial level on April 28, 2006.  (Tr. 10, 62).  After a hearing before an administrative law judge ("ALJ"), the ALJ found Plaintiff not disabled on May 12, 2008.  (Tr. 7-24).  On June 16, 2009, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-4).

Plaintiff filed an appeal to the United States District Court for the Middle District of Alabama, and the court remanded Plaintiff's case to the Commissioner on September 7, 2010. (Tr. 379-93).  The Appeals Council vacated the earlier ALJ decision and remanded the matter for another hearing.  (Tr. 394-96).  On April 15, 2011, the ALJ again found Plaintiff not disabled. (Tr. 302-17).  On April 29, 2013, the Appeals Council denied Plaintiff's request for review.

---

[1] References to pages in the transcript are denoted by the abbreviation "Tr."

(Tr. 530-32). Plaintiff again appealed to the district court, which again remanded the case to the Commissioner on August 14, 2014. (Tr. 870-82).

On November 14, 2014, the Appeals Council vacated the ALJ's decision and remanded the matter for another hearing. (Tr. 883-86). In the interim, Plaintiff had filed a subsequent application on June 6, 2013, which the Appeals Council directed should be associated and addressed on remand. (Tr. 885). On March 3, 2015, the ALJ conducted a hearing and took testimony from Plaintiff, a medical expert, and a vocational expert. (Tr. 949). On June 12, 2015, the ALJ found Plaintiff not disabled from March 6, 2006 through December 31, 2010. (Tr. 948-72). However, on July 8, 2016, the Appeals Council, noting that there was an unadjudicated period from January 1, 2011 through the date last insured of June 30, 2011, remanded the case back to the ALJ to consider the unadjudicated period and the opinion of Jim Mracek II, M.D. (Tr. 979-82). On April 20, 2017, the ALJ conducted a hearing and took testimony from Plaintiff (Tr. 853-63) and from a vocational expert. (Tr. 863-68). The ALJ conducted an additional hearing on November 28, 2017 to take testimony from a medical expert (Tr. 834, 839-48) and the vocational expert (Tr. 849-51). The ALJ took the matter under advisement and issued a written decision on March 7, 2018 that found Plaintiff not disabled. (Tr. 569-89).

The ALJ's written decision contained the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 15, 2006 through her date last insured of June 30, 2011 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: status post hysterectomy related iron deficiency anemia, status post cervical fusion C5-6 in 2004 and 2006, degenerative joint disease of left knee, temporomandibular joint (TMJ) disorder, status post remote carpal tunnel surgery, degenerative joint disease of ankle (20 CFR 404.1520(c)).

2

4.  Through the date last insured, the claimant did not have an impairment or combination of' impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except no pushing or pulling with the upper or lower extremities; frequent reaching but no overhead reaching; frequent fingering; no kneeling, crouching, crawling; no climbing ladders, ropes, or scaffolds; and no hazards. The claimant can perform simple routine repetitive tasks.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on March 15, 1966 and was 45 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate m English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 15, 2006, the alleged onset date, through June 30, 2011, the date last insured (20 CFR 404.1520(g)).

(Tr. 573, 574, 587-88, 589).   On December 22, 2021, the Appeals Council denied Plaintiff's request for review (Tr. 533-35), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at p. 2; Doc. 14 at p. 12). The court finds the case to be ripe for review pursuant to 42 U.S.C. § 405(g); specifically, the court construes Plaintiff's supporting brief (Doc. 14) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 16) as a competing motion for summary judgment. Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.[2]

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted

---

[2] As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge. (Docs. 20 & 21).

simply because the court itself would have reached a result contrary to that of the factfinder.  *See*

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its

review, however, the court must look beyond those parts of the record that support the decision,

must view the record in its entirety, and must take account of evidence that detracts from the

evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986);

*see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a

person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable
> physical or mental impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period of not less than
> 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set
forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next
question, or, on steps three and five, to a finding of disability.  A negative answer
to any question, other than step three, leads to a determination of "not disabled."

---

[3]  A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

---

[4] *McDaniel* is an Supplemental Security Income case. Nonetheless, the same sequence applies to claims for Disability Insurance Benefits brought under Title II. Cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

## III.   Issue on Appeal

The sole issue raised on appeal is whether the ALJ failed to properly consider Plaintiff's carpal tunnel syndrome.  (Doc. 14 at pp. 4, 6).

## IV.   Discussion

Social security regulations and rulings establish the framework for an ALJ's consideration of medical opinions.  *See* 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996).[5]  "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians."  *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014); 20 C.F.R. § 404.1527(c).  A treating physician or source has a history of medical treatment and an ongoing treatment relationship with the claimant consistent with accepted medical practice.  20 C.F.R. § 404.1502.  An examining non-treating physician or source has examined the claimant but does not have an ongoing treatment relationship.  *Id*.  A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant but has provided a medical or other opinion based upon

---

[5] On January 18, 2017, the Social Security Agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence."  82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017).  *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844).  These final rules became effective March 27, 2017, setting forth the rules for evaluating opinion evidence, both medical and nonmedical, and apply only to claims filed with the SSA on or after March 27, 2017.  20 C.F.R. § 404.1527.  Because Plaintiff filed her application on February 21, 2006, the court applies the prior regulations as were in effect at the time of Plaintiff's filing.  *See* 20 C.F.R. § 404.614.  Also, the court notes that the current iterations of §§ 404.1527 & 404.1502, "while purporting to apply to claims filed *before* March 27, 2017, are not identical in language to the version in effect at the time of the ALJ's decision.  For the sake of consistency, the court continues to cite the language from the former regulation sections that were in effect at the time of the ALJ's decision."  *See Belko v. Berryhill*, No. 1:16-CV-2637, 2017 WL 5197241 at *9, n.4 (N.D. Ohio Oct. 23, 2017), *report and recommendation adopted sub nom. Belko v. Comm'r of Soc. Sec.*, No. 1:16CV2637, 2017 WL 5178280 (N.D. Ohio Nov. 8, 2017) (emphasis in original).  Although the current language of the regulations has been modified and renumbered, the changes are not substantive and would not alter the court's analysis.  *See id*.

medical and treatment records. *Id.* "Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006); 20 C.F.R. § 404.1527(c)(1), (2), (5).

In addition to considering the examining and treating relationship of a medical source and any specialization of a medical source, the agency will also consider the supportability and consistency of the medical source's opinion, along with any other factors that tend to support or contradict the medical source's opinion. 20 C.F.R. § 404.1527(c)(1)-(6). "These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F.App'x 521, 523 (11th Cir. 2014). "A central function of the ALJ is to weigh the medical opinions in the record and to resolve any conflicts between such opinions." *Divirgilio v. Comm'r of Soc. Sec.*, No. 6:19-CV-1055, 2020 WL 4593323 at *4 (M.D. Fla. Aug. 11, 2020) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996) ("The ALJ's task is to examine the evidence and resolve conflicting reports.")); *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F.App'x 520, 525 (11th Cir. 2015) ("It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses.") (citation omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations

omitted).  However, an ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court …] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  And "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Id*. at 1055-56.  "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Rodriguez v. Comm'r of Soc. Sec.*, No. 618CV503ORL18TBS, 2018 WL 7113871 at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 618CV503ORL18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion.").

"A claimant must have insured status based on employment earnings in order to qualify for disability and DIB." *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134 at *1 (11th Cir. June 1, 2022).  To be eligible for disability insurance benefits, "a claimant must demonstrate a disability on or before the last date on which he was insured." *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.131 ("To establish a period of disability, you must have disability insured status[.]").  Because Plaintiff's date last insured was June 30, 2011 (Tr. 573), her appeal requires a showing of disability on or before that date.  *See Moore*, 405 F.3d at 1211.  "A claimant who becomes disabled after she loses insured

status must be denied disability insurance benefits despite her disability." *Thomas-Joseph*, 2022 WL 1769134 at *1 (citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).[6] Thus, Plaintiff must have shown that she was disabled from the date of alleged onset, February 15, 2006, through her date last insured, June 30, 2011.

The ALJ's decision made clear that the relevant period for Plaintiff's Title II claim was from February 15, 2006, the alleged onset date, through June 30, 2011, the date last insured. (Tr. 573, 589). The ALJ found that "through the date last insured" Plaintiff had a number of severe impairments, including "status post remote carpal tunnel surgery." (Tr. 573). In fashioning Plaintiff's RFC, the ALJ limited her to sedentary work "except no pushing or pulling with the upper or lower extremities," "frequent reaching but no overhead reaching," and "frequent fingering," among other things. (Tr. 574). The ALJ stated that the RFC finding was strongly informed by the opinion of Dr. William Whatley, the medical expert who testified at the ALJ hearing on March 3, 2015 and again on November 28, 2017. (Tr. 574, 837-848, 949).

Plaintiff contends that the ALJ failed to properly consider her severe impairment of carpal tunnel syndrome. (Doc. 14 at p. 6). Plaintiff asserts that a review of the ALJ's decision indicates that the ALJ's consideration of her carpal tunnel syndrome during the relevant period was minimized due to the subsequent carpal tunnel surgery she underwent in November 2015. (*Id*. at p. 8). Plaintiff maintains that both the ALJ and Dr. Whatley focused on Plaintiff's "carpal tunnel syndrome and related restrictions only after her bilateral carpal tunnel releases in 2015, not on the restrictions actually present" during the relevant period. (*Id*. at p. 10). Plaintiff argues that her "severe impairments did not include 'status post remote carpal tunnel surgery' as errantly

---

[6] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit).

found by the ALJ"—as the record reflected that she "had active and ongoing bilateral carpal tunnel syndrome confirmed by nerve conduction studies." (*Id*. at p. 9, citing Tr. 280, 491-92). In response, the Commissioner contends that Plaintiff theorizes that the ALJ only considered Plaintiff's carpal tunnel syndrome ("CTS") for the period after right and left carpal tunnel releases were performed in 2015 but that, in fact, the ALJ reviewed evidence of sporadic treatment during the relevant period from February 2006 and June 2011. (Doc. 16 at p. 6).

"[T]he mere diagnosis of [a condition] says nothing about the severity of the condition." *Crans v. Berryhill*, No. 3:16-CV-914, 2017 WL 4683933 at *5 (M.D. Ala. Oct. 18, 2017) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Importantly, the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore*, 405 F.3d at 1213 n.6. After a review of the ALJ's decision, the court finds that the ALJ considered the record as a whole and properly considered Plaintiff's carpal tunnel syndrome in determining that Plaintiff was not disabled.

The ALJ noted that Plaintiff's March 2006 disability report indicated that Plaintiff alleged, among other things, carpal tunnel in her wrists. (Tr. 87, 575). The ALJ stated that at the April 20, 2017 hearing Plaintiff "testified that from 2006-2011, the 'biggest' problem that kept her from returning to work was her neck and muscle spasms" and that "the various joint pains she mentioned at the commencement of th[e] process were not mentioned." (Tr. 576, 858, 860-863). The ALJ noted that in April 2007 Dr. Joey R. Boiser evaluated Plaintiff for pain in her neck and

arms and that on physical examination Plaintiff's extremities had good peripheral pulses. (Tr. 275-76, 579). Plaintiff had normal tone and strength in the extremities, and her fine finger movements were normal. (Tr. 276). The ALJ commented that the rest of the examination was unremarkable and that "Dr. Boiser's impression was persistent neck pain and spasms with radiation in both arms, headaches like migraines exacerbated by neck spasms, and recurrent facial twitching etiology uncertain." (Tr. 275-76, 579-80). The ALJ also noted that at the November 28, 2017 supplemental hearing Dr. Whatley referenced the medical records from Plaintiff's April 2007 examination. (Tr. 577, 843). Those records included a letter from Dr. Boiser to Dr. Donovan Kendrick that reflected Plaintiff's history of CTS. (Tr. 275-77, 577, 843). The ALJ summarized Dr. Whatley's testimony as follows:

> Dr. Whatley stated that in Exhibit 10F pg4 there is a letter from Dr. Kendrick stating she had an EMG/nerve conduction studies regarding neck pain that showed bilateral median nerve entrapment which is what carpal tunnel syndrome is. Dr. Whatley said this was mild-moderate on the right and mild on the left.

(Tr. 275, 577, 843).

The ALJ noted that Plaintiff was seen at Jackson Trace Primary Care in July 2007 and complained of a headache. (Tr. 289, 580). The impression included CTS, among other impairments, but the ALJ stated these were impressions, as opposed to diagnoses, that were supported only by allegations rather than clinical evidence. (Tr. 580).

The ALJ observed that Plaintiff did not have any significant treatment over the next two years until April 2009 when she was seen at Neurology Consultants for complaints of numbness and tingling in both shoulders. (Tr. 491, 580). Plaintiff told Dr. Ben C. Wouters that she had CTS but that she had not had anything done for it. (Tr. 491, 580). Plaintiff also complained of intense muscle spasms in her neck and that sometimes her jaws locked on her. (Tr. 491, 580). The ALJ

noted that Dr. Wouters's assessment was carpal tunnel syndrome, cervical radiculitis, and probable TMJ.  (Tr. 492, 580).[7]

The ALJ also considered medical records from Kenneth F. Farha, D.D.S.  (Tr. 462-75, 580).  Dr. Farha completed a Physical Capacities Evaluation ("CPE") in March 2011 in which he opined that Plaintiff could not lift and/or carry and that she had numerous limitations, such as she could "rarely perform gross manipulation (grasping, twisting, and handling) and fine manipulation (finger dexterity), but never perform pushing and pulling movement (arm and/or leg control)." (Tr. 478, 581).  The ALJ gave little weight to Dr. Farha's opinions, finding that the information was inconsistent with treating records and that his examinations were essentially normal.  (Tr. 462-75, 586).  The ALJ explained that Dr. Farha's opinion was not entirely convincing, as the problem he treated her for concerned the jaw and it was not likely that the disorder would have affected the functions that he said were impaired.  (Tr. 581).

The ALJ also stated that Dr. Farha's ability to assess most of the functions was questionable, as he was a dentist rather than a medical doctor.  (Tr. 581).  Where Dr. Farha answered that his reason for finding Plaintiff unable to work full time was because she had not worked for the past six years due to "multiple" orthopedic impairments and TMJ, the ALJ stated that the "fact that someone has not worked does not mean they cannot work."  (Tr. 478, 581).  The ALJ also noted that Plaintiff had not been diagnosed with TMJ until two years earlier and that Dr. Farha's specialization as a dentist did not endow him with significant ability to comment on "multiple" orthopedic problems and the extent to which they would impact Plaintiff's functional status.  (Tr. 581).  Additionally, the ALJ found that another problem with Dr. Farha's opinion was that he oddly declined to indicate the amount of weight or answer questions regarding Plaintiff's

---

[7] Dr. Wouters found that that Plaintiff's grip strength was 5/5 bilaterally.  (Tr. 492).

exertional capabilities.  (Tr. 478, 581).  Lastly, the ALJ found the fact that Plaintiff engaged in at least some activities of daily living indicated at a very minimum she could lift at the sedentary level, which is what Dr. Whatley concluded.  (Tr. 581).

The ALJ also considered that Dr. James Mracek at Jackson Trace Primary Care provided conservative treatment for routine follow-ups of cervical degenerative disc disease, cephalgia, fibromyalgia, restless leg syndrome, GERD, carpal tunnel syndrome, and arthritis from October 2007 through February 2011.  (Tr. 504-27, 582).  The ALJ noted that Dr. Mracek completed a Physical Capacities Evaluation Form in March 2011 in which he opined, in part, that Plaintiff could occasionally lift and/or carry 5 pounds and frequently lift and/or carry 1 pound, occasionally perform activities of gross manipulation (grasping, twisting, handling) and fine manipulation (finger dexterity), and rarely perform activities of pushing and pulling movement (arm and/or leg control) and reaching (including overhead).  (Tr. 528, 582).  The ALJ noted that Dr. Mracek explained that these restrictions were based on Plaintiff's "cervical degenerative disease, fibromyalgia causing significant pain and requiring prescription medication with potential sedation or situations with coordination."  (Tr. 528, 582).

While the ALJ noted that Dr. Mracek was in a better position to assess Plaintiff's function than dentist Dr. Farha, the ALJ gave more weight to the testimony of Dr. Whatley.  (Tr. 583, 586). The ALJ explained that DR. Mracek's opinion, like DR. Farha's opinion, was not supported by the record.  (Tr. 583, 587).  The ALJ gave little weight to Dr. Mracek's opinions in the March 2011 PCE, stating that they were inconsistent with his treating records, examinations, and records from Jackson Trace Primary Care.  (Tr. 586).  The ALJ also stated that Dr. Mracek provided conservative treatment and that Plaintiff was not referred to a specialist for further evaluation of

her impairments.  (Tr. 586-87).  Neither Dr. Farha nor Dr. Mracek attributed any of Plaintiff's functional limitations to CTS.  (Tr. 478, 528).

The ALJ gave great weight to the testimony of Dr. Whatley, the medical expert who testified at the March 3, 2015 and November 28, 2017 hearings.  (Tr. 573).  "[M]edical consultants or medical experts are highly qualified medical specialists who are experts in Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions."  *Helms v. Saul*, No. 4:18-CV-1700, 2020 WL 4192529 at *6 (N.D. Ala. July 21, 2020) (citing former 20 C.F.R. § 404.1527(e)(2)(iii)); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015) (upholding ALJ's decision to give substantial weight to opinions of two non-examining doctors—a board-certified neurosurgeon and the State agency reviewer—where their assessments of claimant's RFC were based on review of medical records). State agency medical or psychological consultants are considered experts in Social Security disability evaluation.  *Hanisee v. Comm'r of Soc. Sec.*, 797 F. App'x 449, 450 (11th Cir. 2019); 20 C.F.R. § 404.1527(e)(2).  ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but ALJs "must consider findings and other opinions of State agency medical and psychological consultants." 20 C.F.R. § 404.1527(e)(2).  An "ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion."  *Edgecomb v. Comm'r of Soc. Sec.*, 841 F. App'x 142, 144 (11th Cir. 2020); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("'The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'") (citations omitted).  In giving substantial weight to Dr. Whatley's opinion, the ALJ stated:

> While not a treating physician, Dr. Whatley was the Agency's testifying medical expert, who had the opportunity to review the entire medical record in this case. His opinion is generally consistent with the record as a whole. In fact, it has been consistent over a period of years, having been recalled now for the third time.

(Tr. 578).

The ALJ noted that the Appeals Council did not vacate the prior decision and that their intent appeared to be for the ALJ to consider the unadjudicated period and to assess the import of Dr. Mracek's new opinion.  (Tr. 570).  Thus, the ALJ determined that the conclusions reached in the prior decision were adopted "herein for all sequential steps and time periods."  (Tr. 582).  The ALJ stated, "I found Dr. Whatley's testimony in the prior hearing persuasive, and continue to find his testimony in 2017 reliable and supportive of the conclusion that the stated restrictions are sufficient."  (Tr. 574).  Addressing the opinions of Dr. Mracek and Dr. Farah, the ALJ noted:

> Dr. Whatley stated that these two [opinions] are very different and one was much more severe. Dr. Whatley said that Farah was much more severe than Mracek, but he did not see the objective findings in the record to warrant support for either opinion. Dr. Whatley said that the use of the medications on a regular basis would not result in the claimant being that sedated. Dr. Whatley conceded that pain is subjective, but in his opinion, the clinical findings would not result in a functional status precluding work.

(Tr. 578).

Plaintiff argues that "[b]oth the language of the ALJ's decision and the testimony of the medical expert seem to indicate a correcting or improvement of [her] carpal tunnel syndrome *during* the time period in question."  (Doc. 14 at p. 10) (emphasis added).  In the ALJ's decision, the ALJ noted that "Dr. Whatley said that the claimant had a release done in November 2015. Dr. Whatley said that the carpal tunnel syndrome *was no longer severe, but I have still included it*."  (Tr. 577) (emphasis added).  The phrase "no longer" implies that at one point the CTS was severe.  Further, the ALJ, who determines a claimant's RFC, deemed Plaintiff's CTS, even after surgery, was still a severe impairment.  *Moore*, 649 F. App'x at 945 ("[T]he task of determining a

16

claimant's [RFC] and ability to work rests with the [ALJ], not a doctor."); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.").   This determination was consistent with the ALJ's June 12, 2015 decision, which was issued before Plaintiff's carpal tunnel surgery in November 2015, where the ALJ found CTS was a severe impairment.  (Tr. 952).  In addressing Dr. Whatley's opinion testimony, the ALJ stated:

> Dr. Whatley stated that the claimant would be limited with overhead work occasionally with both upper extremities. He stated that the claimant could frequently push and pull with the upper extremities and no limitations with fingering and handling. I nonetheless limited the claimant more. I added a fingering limit for the carpal tunnel syndrome which was *nonetheless repaired*. I completely eliminated pushing and pulling but again observe that this is not required at the sedentary level. I agree with the overhead reaching restriction but limited her further with overhead reaching and added some additional reaching restriction.

(Tr. 578) (emphasis added).

Again, the ALJ included a fingering limit even though the CTS was "nonetheless repaired." The court reads this phrase to indicate that although the CTS may be repaired now, the unrepaired impairment existed during the relevant period and thus the fingering limitation reflected the existing state of Plaintiff's CTS during the relevant period prior to surgery in November 2015. (*See* Tr. 582: "As far as carpal tunnel, Dr. Whatley did not feel it continued as severe after surgery, but I conceded it, including restrictions in the RFC.").  Moreover, the ALJ stated the following:

> Records from Montgomery Neurosurgical Associates show that in October 2015, the claimant underwent a right carpal tunnel release by Dr. Patrick Ryan in Exhibit 27F pg30. A month later in November 2015, the claimant underwent a left carpal tunnel release pg23. *The follow up in December 2015, Dr. Ryan noted that the claimant's wound looked much better and was nearly healed. She was told to follow up on an "as needed basis."* Dr. Whatley did not consider these conditions significant, but I incorporated them in the RFC because the claimant has been alleging this for some time.

(Tr. 585) (emphasis in original and supplied).

The record demonstrates that the ALJ considered Plaintiff's CTS symptoms that existed during the relevant period.  As to the severity of those symptoms during the relevant period, Plaintiff failed to present evidence showing that their severity was greater than those assessed by the ALJ.  The record shows that Plaintiff "testified that from 2006-2011, the 'biggest' problem that kept her from returning to work was her neck and muscle spasms" and that "the various joint pains she mentioned at the commencement of th[e] process were not mentioned."  (Tr. 576, 858, 860-863).  Dr. Joey R. Boiser's April 2007 examination was unremarkable, as Plaintiff had normal tone and strength in the extremities and her fine finger movements were normal.  (Tr. 275-76, 579-80).  The 2007 letter from Dr. Boiser to Dr. Donovan Kendrick reflected Plaintiff's history of CTS, which showed carpal tunnel syndrome that was mild-moderate on the right and mild on the left.  (Tr. 275-77, 577, 843).  The July 2007 records from Jackson Trace Primary Care reflected that the impression of CTS was just an impression as opposed to a diagnosis and was supported only by allegations, rather than clinical evidence.  (Tr. 580).  The records also demonstrated that Plaintiff did not have any significant treatment over the next two years until April 2009.  (Tr. 491, 580).  Plaintiff told Dr. Wouters that she had CTS, but that she had not had anything done for it.  (Tr. 491, 580).  Dr. Wouters's assessment was carpal tunnel syndrome, cervical radiculitis, and probable TMJ.  (Tr. 492, 580).  Dr. Wouters found that that Plaintiff's bilateral grip strength was 5/5 bilaterally.  (Tr. 492).  Also, Dr. Mracek only provided conservative treatment to Plaintiff, and Plaintiff was not referred to a specialist for further evaluation of her impairments.  (Tr. 586-87).  Moreover, Dr. Mracek did not attribute any of Plaintiff's functional limitations to CTS.  (Tr. 528).  A "claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  *Ellison*, 355 F.3d at 1276.

Here, the record reflects that the ALJ properly considered Plaintiff's CTS during the relevant period in fashioning Plaintiff's RFC and gave sufficient reasons for giving certain weight to the various medical opinions.  The ALJ's decision demonstrates that the ALJ considered the entire record in finding Plaintiff not disabled.  The ALJ's determination was consistent with the ALJ's prior decision.  Accordingly, the court finds that the ALJ's decision was supported by substantial evidence.

**V.      Conclusion**

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 14) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 16) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 29th day of September 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**